IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| VICKI LYNN NORVELL, | * | |
| Plaintiff, | * | |
| v. | * | Civil Action No. RDB-14-3662 |
| METROPOLITAN LIFE INSURANCE COMPANY, | * | |
| | * | |
| Defendant. | * | |
| | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \*

## **MEMORANDUM OPINION**

Plaintiff Vicki Norvell ("Plaintiff" or "Norvell") initiated the present action against Defendant Metropolitan Life Insurance Company ("Defendant" or "MetLife"), claiming breach of contract.[1] Specifically, Plaintiff alleges that Defendant failed to pay benefits due under an Accidental Death and Dismemberment Insurance Policy ("the Policy") following the death of her husband, Tas[2] Owens ("Decedent" or "Owens"). Plaintiff originally filed this action in the Circuit Court for Anne Arundel County, Maryland. Compl., p. 1., ECF No. 2. The Defendant removed this action to this Court based on diversity of citizenship under 28 U.S.C. § 1332, as Norvell is a citizen of Maryland and MetLife is incorporated in the state of New York, with its principal place of business in New York, New York. *See*

---

[1] Plaintiff initially alleged "gross negligence and malice and evil intent." Compl. at ¶ 6, ECF No. 2. However, in an April 20, 2015 Joint Status Report, she agreed to neither "claim . . . bad faith" nor "seek[] punitive damages." Joint Status Report at ¶ 8, ECF No. 13. Her "claim is for breach of contract for $195,000." *Id.*
[2] Plaintiff refers to her deceased husband as both "Tas" and "Taz." *See, e.g.*, Compl. at ¶ 5, ECF No. 2; Pl. Mot Summary J. at ¶ 3, ECF No. 14. Mr. Owens' state-issued Certificate of Death (ECF No. 14-2) spells his first name "Tas." Therefore, this Court will adopt that spelling of the decedent's name.

1

Not. Of Removal, p. 3, ECF No. 1. In addition, the amount in controversy exceeds $75,000. *Id.* Currently pending before this Court are Plaintiff's Motion for Summary Judgment (ECF No. 14), Plaintiff's Motions in Limine (ECF Nos. 15 & 17), Defendant's Cross Motion for Summary Judgment (ECF No. 22), and Plaintiff's Second Motion for Summary Judgment (ECF No. 23). For the reasons stated below, Plaintiff's Motion for Summary Judgment (ECF No. 14) is DENIED, and Plaintiff's Second Motion for Summary Judgment (ECF No. 23) is also DENIED. Additionally, Defendant's Cross Motion for Summary Judgment (ECF No. 22) is DENIED. A hearing will be scheduled to resolve Plaintiff's pending Motions in Limine (ECF Nos. 15 & 17).

## **BACKGROUND**

Plaintiff Vicki Norvell ("Plaintiff" or "Norvell") is an employee of the State of Maryland. Norvell Aff., p. 11, ECF No. 22-3.[3] As a state employee, she is covered by a Voluntary Accidental Death and Dismemberment Insurance Policy ("the Policy"), underwritten by Defendant Metropolitan Life Insurance Company ("Defendant" or "MetLife"). *Id.* at p. 11-12. On September 19, 2010, Norvell married Tas Owens ("Decedent" or "Owens") and added him to the policy as a dependent. *See Id.* at p. 12; Pl. Mot. Summary J. at ¶ 5, ECF No. 14; Claim Coverage List, ECF No. 22-4.

The Policy guaranteed Norvell a $195,000 benefit payment in the event Owens "sustain[ed] an accidental injury that [was] the Direct and Sole Cause of a Covered Loss." Policy, p. 42, MET000186, ECF No. 20-2. According to the Policy, "Direct and Sole Cause means that the Covered Loss occurs within 12 months of the date of the accidental injury

---

[3] The parties have stipulated that "all documents produced by Plaintiff and Defendant are genuine." Joint Stipulation of Facts at ¶ 1, ECF No. 22-7.

and was a direct result of the accidental injury, independent of other causes." *Id.* A covered loss is an injury for which an insured party may recover benefits, including loss of life. *Id.* at 23, MET000167.

The Policy does not provide benefits "for any loss caused or contributed to by:"

1. physical or mental illness or the diagnosis or treatment of such illness;
2. infection, other than infection occurring in an external accidental wound;
3. suicide or attempted suicide;
4. self-inflicted injury by an insane person;
5. service in the armed forces of any country or international authority, except the United States National Guard;
6. You or Your Dependents committing or attempting to commit a felony;
7. You or Your Dependents being under the influence of any narcotic;
8. war, whether declared or undeclared; or act of war.

*Id.* at 42, MET000186. Additionally, the Policy includes an "Exclusion for Intoxication" provision. *Id.* That provision states as follows:

**Exclusion for Intoxication**

We will not pay benefits under this section for any loss resulting from Your or Your Dependents intoxication.

Intoxicated means that Your or Your Dependents blood alcohol level met or exceeded the level that creates a legal presumption of intoxication under the laws of the jurisdiction in which the incident occurred. *Id.*

Norvell has testified that her husband, Owens, drank alcohol on a nightly basis, both to cope with chronic pain and to help him relax. Norvell Dep., p. 35, 70, ECF No. 14-4. However, on the night of January 30, 2013, there was no alcohol in their house. *Id.* at 40. Norvell testified that Owens was drinking soda when she went to bed. *Id.* At that time, he seemed "normal and coherent." *Id.* However, when Norvell awoke the next morning, she found Owens "really out of it, . . . not coherent," and hardly able to speak. *Id.* Norvell called an ambulance, and Owens was transported to a hospital. *Id.*

The parties have stipulated that Owens "intentionally drank Prestone from a spray bottle of Prestone Ice and Frost Shield." Joint Stipulation of Facts at ¶ 2, ECF No. 22-7. He "unscrewed the top of [the bottle] and either poured the Prestone into a glass and drank it, or drank [it] directly from the bottle." *Id.*

Prestone Ice and Frost Shield is sold in a plastic spray bottle. *See* Prestone Photo, ECF No. 14-5. Prestone is a vehicle glass treatment product. *Id.* It is intended to be sprayed onto a car's exterior glass surfaces in the evening to prevent morning frost. *Id.* The front of the bottle reads, in large letters: "Prestone Ice and Frost Shield." *Id.* A warning is written on the back of the bottle. It states the following:

> "DANGER [skull and cross bones image] POISON: Contains methyl alcohol (67-56-1) and propylene glycol (57-55-6). PRECAUTIONARY MEASURES: Cannot be made nonpoisonous. Do not swallow or breathe vapors. Avoid eye and skin contact. Use in a well-ventilated area. Deliberate concentration and inhalation of vapors may be fatal. FIRST AID: If swallowed, do NOT induce vomiting. IMMEDIATELY call a local poison control center or hospital emergency department. If inhaled, move person into fresh air. If in eyes, immediately flush eyes with water for 15 minutes. If on skin, remove contaminated clothing and wash skin thoroughly with soap and water. If irritation develops and persists, contact a doctor.
> KEEP OUT OF REACH OF CHILDREN.

Prestone Photo, ECF No. 14-5 (emphasis omitted).

Owens died on February 1, 2013 at a hospital in Annapolis, Maryland. Certificate of Death, ECF No. 14-2. The cause of death was listed as "Methanol Poisoning." *Id.* Nothing in the record suggests that Owens left a suicide note. Tests taken at the hospital indicate that Owens' methanol blood alcohol level was 333 milligrams per deciliter, or .333 grams per

100 milliliters.[4] Abstract Report, p. 21, ECF No. 17-4. Owens had an alcohol serum level of less than 10 milligrams per deciliter, or .01 grams per milliliter. IP Encounter Report, p. 5, ECF No. 17-2. Dr. Yale Caplan was hired by Defendant to review Owens' records. He concluded that Owens consumed at least 14-25 ounces of Prestone, or at least forty-five percent of the bottle. Caplan Report, p. 3, ECF No. 22-6. The methanol contained in Prestone caused intoxication, loss of hand-eye coordination, diminished vision, depression of Owens' nervous system, severe toxicity, and ultimately death. *Id.*

Plaintiff retained Dr. Aaron Noonberg to assess whether Owens died accidentally or by suicide. Dr. Noonberg concluded that Owens died of methanol poisoning, but that the facts do not support a finding of suicide.[5] Noonberg Post Morten Eval. at p. 1, ECF No. 14-6. Rather, Dr. Noonberg concluded, Owens needed a drink, but did not have any alcohol in the house. *Id.* at 7. Therefore, like many alcoholics, he reached for another liquid with alcohol as a primary ingredient. *Id.* In the present case, that liquid happened to be Prestone. *Id.* In reaching his conclusion, Dr. Noonberg considered a wide array of evidence, including information about Owens' lifestyle and recent activity, as an indication of his mental state.

Dr. Noonberg first considered evidence suggesting that Owens did commit suicide. *Id.* at 2. He noted that Owens had recently resumed contact with his estranged mother. *Id.* Although this may have been a "goodbye," Norvell had stated that Owens was proud to

---

[4] Under MD. CODE ANN., CTS. & JUD. PROC. § 10-307(a)(3), blood alcohol concentrations expressed in milligrams per deciliter should be converted into grams per 100 milliliters by dividing the measure by 1000.
[5] Defendant has attacked Dr. Noonberg's report as an "unsworn expert report" and argues that it is not admissible as evidence under Rule 56 of the Federal Rules of Civil Procedure. Def. Mot. Summary J., p. 9, ECF No. 22-1. This Court will consider Dr. Noonberg's report in ruling on the instant motions. However, even if this Court did not consider Dr. Noonberg's report, it would still deny Defendant's Motion for Summary Judgment. The record contains sufficient evidence, even without Dr. Noonberg's report, such that there is a genuine issue of material fact. *See* discussion *infra*.

show off his wife.  *Id.*  Additionally, his conduct did not change significantly following the visit.  *Id.*  Second, Dr. Noonberg discovered that Owens' had a job in automobile parts, suggesting that he was familiar with toxic chemicals and therefore aware of the dangers of drinking a product like Prestone.  *Id.*  Third, Owens had discussed the possibility of increasing his life insurance coverage.  *Id.*  However, Norvell indicated that he understood that life insurance companies do not pay proceeds when an individual commits suicide.  *Id.*  Additionally, his health had improved following a recent surgery, and he did not actually follow through on his plan to increase life insurance coverage.  *Id.*  Ultimately, Dr. Noonberg concluded that the weight of the evidence suggested a non-suicidal death.  The evidence weighing against suicide included the following:

Norvell indicated that Owens drank alcohol nightly, and that there was no alcohol in the house at the time of his death.  *Id.* at 2-3.  According to Dr. Noonberg, many alcoholics will drink a wide range of products when alcohol is not available.  *Id.*  He found no evidence that Owens expected to die from the amount of Prestone he consumed.  *Id.* at 3.  Additionally, Norvell suggested that her marriage to Owens was very happy.  *Id.*  Owens got along well with her family and they went on trips together, despite only two years of marriage.  *Id.*  Owens loved cats and had adopted one just a year before his death.  Furthermore, Owens had access to prescription Oxycotin and Ativan, both of which could have been used to attempt a suicide if that is what he had intended.  *Id.*  In fact, it would have been a less painful alternative to drinking Prestone.  *Id.*

Dr. Noonberg further observed that Owens had clear plans to join a shooting range with his wife and had lamented that his alcohol intake was unhealthy, that Owens' Facebook

activity indicated that he had a supportive circle of friends, and that he was in the process of restoring a classic car. *Id.* at 3-4. Owens was recovering from surgery, was feeling much better, and had begun enjoying activities and foods he had been unable to enjoy for a long time on account of his illness. *Id.* at 4. Furthermore, Owens had just become interested in football and was enjoying watching games. *Id.* at 4.

Dr. Noonberg also discovered that Owens was planning a trip to Mexico or Jamaica at the time of his death. *Id.* He had compiled a list of destinations he wished to visit during summer 2013. *Id.* Owens had stated that he wanted to take Norvell to Hawaii for their 50th wedding anniversary and, although Owens died before Valentine's Day, he had already made Valentine's Day dinner reservations for Norvell and himself. *Id.*

Owens professional life also weighed against suicidal behavior. He had recently been hired at a new job, with a higher salary and more pleasant work environment. *Id.* at 6. He had recently purchased new boots, and renewed his license as a tow truck operator. *Id.* at 5. Although he had a prior history of depression, Owens was not prescribed medication for depression and his medical records indicated that he was psychologically normal. *Id.* at 6. Additionally, he was prescribed opiates for back pain, which would have been contraindicated if he was severely depressed. *Id.*

Dr. Noonberg further noted that Owens was very pleased with his doctor, who had recently identified the cause of his gall bladder problems. *Id.* at 6. Owens had stopped smoking in 2012 and had not resumed. *Id.* Additionally, medical records from September of 2012 and January of 2013 indicate that Owens had no psychological complaints. *Id.* During several visits to his primary care provider, Dr. Joseph Randall, Owens exhibited no signs of

7

anxiety or use of psychiatric medication. *Id.* at 6-7. Owens had not exhibited any of the common signs of suicidal intent, including giving away possessions, stockpiling medication, or saying goodbye to friends and family. *Id.* at 7. Finally, Dr. Noonberg noted that Owens' Death Certificate did not indicate suicide as his cause of death. *Id.* at 6. In light of these findings, Dr. Noonberg concluded that Owens' death was not a suicide.

Following Owens' death, Norvell submitted a claim for benefits under the Policy, which was subsequently denied.[6] She initiated the present action by filing a Complaint in the Circuit Court for Anne Arundel County, Maryland. Compl., p. 1, ECF No. 2. She alleges breach of contract by Defendant and seeks to recover $195,000, "the potential value of the insurance proceeds at issue." Joint Status Report at ¶ 8, ECF No. 13. The case was removed to this Court on November 21, 2014. Subsequently, Norvell filed a Motion for Summary Judgment (ECF No. 14) and two Motions in Limine (ECF Nos. 15 & 17). Her first Motion in Limine seeks an instruction to "the juries, witnesses, experts, and anyone who will testify" that Dr. Caplan "cannot testify to anything except areas of toxicology." Pl. Mot in Limine, ECF No. 15. In her second Motion in Limine, Norvell seeks an instruction that neither the "suicide" nor "intoxication" exclusions to the Policy apply in this case. Pl. Mot. in Limine, p. 1, ECF No. 17.[7] Defendant has since filed a Cross Motion for Summary Judgment (ECF No. 22) and Plaintiff has filed a Second Motion for Summary Judgment (ECF No. 23).

---

[6] Norvell did receive a $25,000 benefit payment under a separate life insurance policy provided by her employer and underwritten by MetLife. Norvell Aff., p. 13, ECF No. 22-3.

[7] Plaintiff's second Motion in Limine is essentially a second memorandum in support of her Motion for Summary Judgment. She argues that Owens' death was neither suicide nor caused by his intoxication.

## **STANDARD OF REVIEW**

Rule 56 of the Federal Rules of Civil Procedure provides that a court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). A material fact is one that "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A genuine issue over a material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* In considering a motion for summary judgment, a judge's function is limited to determining whether sufficient evidence exists on a claimed factual dispute to warrant submission of the matter to a jury for resolution at trial. *Id.* at 249.

In undertaking this inquiry, this Court must consider the facts and all reasonable inferences in the light most favorable to the nonmoving party. *Scott v. Harris*, 550 U.S. 372, 378 (2007). However, this Court must also abide by its affirmative obligation to prevent factually unsupported claims and defenses from going to trial. *Drewitt v. Pratt*, 999 F.2d 774, 778-79 (4th Cir. 1993). If the evidence presented by the nonmoving party is merely colorable, or is not significantly probative, summary judgment must be granted. *Anderson*, 477 U.S. at 249-50. On the other hand, a party opposing summary judgment must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986); *see also In re Apex Express Corp.*, 190 F.3d 624, 633 (4th Cir. 1999). This Court has previously explained that a "party cannot create a genuine dispute of material fact through mere speculation or compilation of inferences." *Shin v. Shalala*, 166 F. Supp. 2d 373, 375 (D. Md. 2001) (citations omitted).

When both parties file motions for summary judgment, as here, the court applies the same standard of review to both motions, with this Court considering "each motion separately on its own merits to determine whether either [side] deserves judgment as a matter of law." *Rossignol v. Voorhaar*, 316 F.3d 516, 523 (4th Cir. 2003), *cert denied*, 540 U.S. 822 (2003); *see also havePower, LLC v. Gen. Elec. Co.*, 256 F. Supp. 2d 402, 406 (D. Md. 2003) (citing 10A Wright & Miller, *Federal Practice & Procedure* § 2720 (3d ed.1983)).

## **ANALYSIS**

I.   Plaintiff's Motion for Summary Judgment

Plaintiff contends that the undisputed facts support only once conclusion—that "Owens did not intentionally take his life." Pl. Mot. Summary J. at ¶ 12, ECF No. 14. "[L]ife was going extremely well" for Owens at the time of his death, Plaintiff argues. *Id.* at ¶ 17. He did not commit suicide, she claims, but rather drank Prestone because it contained alcohol. *Id.* According to Plaintiff, drinking alcohol was a nightly ritual for Owens, but there was no alcohol in the house on the night of February 30th. *Id.* She posits that alcoholics often resort to products like Prestone that *contain* alcohol when alcohol is not otherwise available. *Id.* The Prestone bottle indicates that it contains alcohol, it looks like alcohol, and even smells like alcohol, she observes, but provides inadequate warning of its dangers. *Id.* at ¶ 12-13. Plaintiff notes that Owens did not leave a suicide note. *Id.* at ¶ 18.

Plaintiff asserts that Maryland law creates a presumption against suicide and, therefore, that Defendant bears "the burden of proving that the death of insured, under an accidental death clause, was due to suicide." *Id.* at ¶ 14 (quoting *Dick v. New York Life Ins. Co.*, 359 U.S. 437 (1959)). Owens' actions were "careless," but he did not "intend" to take

10

his own life, Plaintiff argues. *Id.* at ¶ 19. She claims that no evidence in the record rebuts Maryland's presumption against suicide. *Id.* Therefore, she argues, as a matter of law Owens' death was not suicide, Defendant wrongly denied her claim for benefits, and she is entitled to summary judgment. *Id.* at p. 5-6.

Defendant raises several objections to Plaintiff's Motion for Summary Judgment. Def. Opp'n, p. 8, ECF No. 22-1. First, Defendant claims that whether or not Owens committed suicide is a material fact in dispute. *Id.* While the parties have stipulated that Owens "intentionally drank the Prestone that killed him," they disagree over whether or not he intended to kill himself. *Id.*; *see also* Joint Stipulation of Facts at ¶ 2, ECF No. 22-7. Furthermore, Defendant notes that much of Plaintiff's argument depends on the findings of Dr. Noonberg, which are contained in his "unsigned and unsworn" expert report. *Id.* Since the report is unsworn, Defendant argues, this Court cannot consider it in ruling on Plaintiff's Motion for Summary Judgment. *Id.* at p. 8-9. Plaintiff does not otherwise meet her burden of establishing no material dispute of fact and, therefore, her motion must be denied. *Id.* Defendant also objects that Plaintiff's allegations regarding the look and smell of Prestone and the inadequacy of the warning labels have no foundation in the record. *Id.* at p. 10.

Additionally, Defendant denies that "MetLife has the burden of proof to show Decedent's death was accidental." *Id.* at p. 9, n. 2. Under long-standing Maryland precedent, Defendant argues, "[P]laintiff has the burden of showing that the death was [accidental]," and introducing the defense of suicide does not shift the burden to the Defendant. *Id.* (citing *Globe Indem. Co. of New York v. Reinhart*, 152 Md. 439 (1927). Finally, Defendant objects to Plaintiff's misguided assumption that "if [Owens] did not commit

11

suicide, then his death is covered under the Policy." *Id.* at p. 9. On the contrary, Defendant argues, the Policy specifically excludes from coverage intentional injuries and those that occur as a result of intoxication. *Id.* Defendant claims that Plaintiff has not established as a matter of law that these exclusions do not apply. *Id.* at 10.

After reviewing the evidence in the record, this Court finds that there are genuine issues of material fact with respect to whether Owens intended to commit suicide or, at least, intentionally injure himself. While it is true that Owens did not leave a suicide note, the parties have stipulated that he "intentionally" drank a fatal dose of a poisonous substance. There is no indication that he was intoxicated at the time he first picked up the Prestone container and there is no indication that he had poor eyesight. In fact, Plaintiff admits that Owens read the container to identify that it contained alcohol. The container's label included a paragraph of warning materials, stating "DANGER [skull and cross bones image] POISON . . . Cannot be made nonpoisonous. Do not swallow or breathe vapors. Avoid eye and skin contact . . . FIRST AID: If swallowed, do NOT induce vomiting. IMMEDIATELY call a local poison control center or hospital emergency department." Regardless of whether Dr. Noonberg's report is admitted into evidence, a genuine issue of material fact remains. Plaintiff is not entitled to judgment as a matter of law. Therefore, Plaintiff's Motion for Summary Judgment (ECF No. 14) is DENIED.

II.     Defendant's Motion for Summary Judgment

Defendant claims that no reasonable jury could find Owens' death accidental and that the Policy's intoxication exclusion precludes recovery for his death as a matter of law. Def. Mot. Summary J., p. 11., ECF No. 22-1. Therefore, Defendant argues, it is entitled to

summary judgment. *Id.* However, a genuine dispute of material fact remains as to both questions, so both of Defendant's arguments fail.

    A. <u>Owens' Death Did Not Result From His Intoxication as a Matter of Law</u>

The Policy includes an "Exclusion for Intoxication" provision, which denies coverage for deaths "resulting from . . . intoxication" as defined "under the laws of the jurisdiction in which the incident occurred." Policy, MET000186, ECF No. 20-2. Plaintiff does not dispute that "the incident occurred" in the State of Maryland. Def. Mot. Summary J., p. 11, ECF No. 22-1. In the Complaint, she alleges that "at all times the Plaintiff and Plaintiff's decedent were residents of Anne Arundel County, Maryland." Compl. at ¶ 1, ECF No. 2. Maryland law recognizes a legal presumption of intoxication at a blood alcohol level of 0.08 grams per 100 milliliters. Def. Mot. Summary J., p. 11, ECF No. 22-1. Additionally, Maryland defines "alcohol" as "any substance or substances containing any form of alcohol, including . . . methanol . . ." *Id.* (citing MD. CODE, TRANSP. § 11-103.1). Therefore, Defendant contends, Owens' death falls within this exclusion as a matter of law because his methanol blood alcohol level was .333 grams per milliliter, rendering him "intoxicated," and he died from "methanol poisoning," a result of his methanol "intoxication." *Id.* at p. 12.

Plaintiff's Second Motion for Summary Judgment directly addresses Defendant's argument under the intoxication exclusion. Pl. Second Mot. Summary J., ECF No. 23. She again contends that the facts in this case are undisputed and reiterates her argument that Owens' death was neither intentional nor the result of intoxication and, therefore, that she is

entitled to judgment as a matter of law. *Id.* Specifically, she argues that Owens was not intoxicated because his "blood alcohol level was less than .01." *Id.* at ¶ 8.[8]

The parties have stipulated that the decedent, Mr. Owens, drank Prestone from a spray bottle of Prestone Ice and Frost Shield. Joint Stipulation of Facts at ¶ 2, ECF No. 22-7. Additionally, they agree that Maryland's legal presumption of intoxication at a blood alcohol level of 0.08 grams per 100 milliliters controls in this case. However, based on the evidence in the record, there is room for reasonable minds to disagree over whether Owens was "intoxicated" within the meaning of the Policy and whether his death "result[ed] from" his "intoxication." The parties seem to cite different measures of blood alcohol concentration. Defendant cites Owens' methanol blood alcohol level of .333 grams per 100 milliliters, Abstract Report, p. 21, ECF No. 17-4, while Plaintiff cites Owens' alcohol serum level, which was less than .01 grams per milliliter, IP Encounter Report, p. 5, ECF No. 17-2. Neither party has presented this Court with compelling scientific or legal authority indicating which measure is the appropriate measure of intoxication in this case.

Additionally, even if this Court were to accept that Owens was intoxicated at the time of his death, it is not clear that his death "result[ed] from" intoxication as a matter of law. Most cases interpreting intoxication exclusions in insurance contracts have involved a more direct causal link between intoxication and death than the present case. *See, e.g., Balthis v. AIG Life Ins. Co.*, 5 Fed. Appx. 320, 323 (4th Cir. 2001) (upholding trial court's decision to

---

[8] To the extent that Plaintiff reiterates in her Second Motion for Summary Judgment claims already made in her initial Motion for Summary Judgment, her argument fails. *See* discussion *supra*. Additionally, her arguments for summary judgment on account of the inapplicability of the Intoxication Exclusion fail. As discussed *infra*, a genuine dispute of material fact remains as to whether Owens was intoxicated and, if he was, whether his death "result[ed] from" his intoxication. Therefore, Plaintiff's Second Motion for Summary Judgment (ECF No. 23) is DENIED.

grant defendant insurer's motion for summary judgment where "the decedent died after he choked on his vomit which was caused by alcohol intoxication"); *Horton v. Life Ins. Co. of North America*, No. ELH–14–32015, 2015 WL 1469196, at *30 (D. Md. Mar. 30, 2015) (denying summary judgment where decedent was found in open water with a blood alcohol concentration of .13. and had been operating a boat while drinking alcohol). This case is unique in that the same liquid that intoxicated Owens also poisoned him, and it is unclear from the evidence in the record whether intoxication occurred before, after, or simultaneously with death. The United States Court of Appeals for the Eighth Circuit recently ruled on a similar case, in which a woman died of "mixed drug intoxication." *See Nichols v. Unicare Life and Health Ins. Co.*, 739 F. 3d 1176, 1179 (8th Cir. 2014). Finding that an intoxication exclusion similar to the one in this case did not apply to the woman's death, the court reasoned that the exclusion "is intended to apply to death caused by committing acts, such as driving, while intoxicated; not to situations where the immediate cause of death is ingestion of a lethal mixture of drugs." *Id.* at 1184.

After reviewing the evidence in the record, there is a genuine issue of material fact with respect to causation in this case. In fact, in her Second Motion in Limine, Plaintiff argues that Owens' death was not caused by intoxication. Pl. Second Mot. in Limine at ¶ 13, ECF No. 17. On the contrary, she contends, a fatal dose of Prestone is two ounces, while it would take "at least four two-ounce drinks" to reach "intoxication." *Id.* Therefore, she concludes, intoxication could not have been the cause of Owens' death because Owens' would necessarily have received a deadly dose of Prestone before becoming intoxicated. *Id.* For these reasons, Defendant's first argument for summary judgment fails.

B. <u>Owens' Death Was Not The Result of an Intentional Injury as a Matter of Law</u>

Defendant argues that, even if Owens did not intend to commit suicide, he still died from an intentional injury. Def. Mot. Summary J., p. 14, ECF No. 22-1. Defendant notes that, under Maryland law, "the key inquiry is whether the intentional act caused a foreseeable injury, not whether the decedent derived pleasure from the injury or intended result." *Id.* (citing *MAMSI Life & Health Ins. Co. v. Callaway*, 825 A.2d 995 (Md. 2003)). Here, Defendant argues, "drinking Prestone poses a serious foreseeable risk of injury or death." *Id.* at p. 15. Plaintiff acknowledges that Owens' read the label, and the label includes the warning "fatal if swallowed." *Id.* Even if this Court applied an objective, rather than subjective, standard of foreseeability,[9] Defendant argues, it must still find as a matter of law that Owens' actions were intentional. *Id.* at 16. A reasonable person would surely have expected that drinking a large amount of a poisonous substance labeled "DANGER [skull and cross bones] POISON" would cause death. *Id.* at 17. Therefore, Defendant argues, Plaintiff's "accidental death" policy does not cover Owens' death.

Dr. Noonberg testified that Owens did not commit suicide, but rather drank Prestone because it contained alcohol. Alcoholics often display this behavior when, as in this case, there is no other available source of alcohol. Additionally, Dr. Noonberg noted that Owens had recently experienced a string of positive developments in his life that

---

[9] Under Maryland law, an insured party's injury is not considered accidental if it results from a voluntary act taken by the insured with a serious foreseeable risk. *See Gordon v. Metropolitan Life Ins. Co.*, 260 A.2d 338, 339-40 (Md. App. 1970). The Maryland Court of Appeals has established a different test for determining whether an insured's death caused by a third party was an accident. *See Cole v. State Farm Mut. Ins. Co.*, 753 A.2d 533, 542 (Md. App. 2000). The *Cole* test includes analyses of both objective and subjective foreseeability. An injury is not "accidental" if either the insured or a reasonable person with the same knowledge and experience as the insured would have foreseen injury. *Id.* While the *Cole* test has not been applied to self-inflicted injuries, Defendant still addresses both subjective and objective foreseeability.

suggest he would not have drunken Prestone if injury was foreseeable. These included a new job, new pet, and a recent surgery that had dramatically improved his quality of life. Furthermore, he had made plans for the following summer and even had dinner reservations with his wife for Valentine's day. Even if Dr. Noonberg's report is not admitted into evidence, there is additional evidence in the record sufficient to create a genuine issue of material fact with respect to Owens' "intent." Plaintiff testified that Owens drank nightly and that he did not have alcohol in the house on the night he drank Prestone. Additionally, while the Prestone bottle included labels indicating the dangers of consuming it, a genuine issue of material fact remains regarding whether or not they were insufficient to put someone on alert as to the danger, particularly someone who was unfamiliar with the product. While Dr. Noonberg noted that Owens worked in automobile parts, there is no indication that he had purchased the Prestone that was in his home, that he had ever used it, or even seen it before. As an issue of fact exists as to Owens' cause of death, Defendant's second argument fails. Defendant is not entitled to judgment as a matter of law and, consequently, its Motion for Summary Judgment (ECF No. 22) is DENIED.

## CONCLUSION

For the foregoing reasons, Plaintiff Vicki Norvell's Motion for Summary Judgment (ECF No. 14) is DENIED, and her Second Motion for Summary Judgment (ECF No. 23) is also DENIED. Additionally, Defendant Metropolitan Life Insurance Company's Cross Motion for Summary Judgment (ECF No. 22) is DENIED. A hearing will be scheduled to resolve Plaintiff's pending Motions in Limine (ECF Nos. 15 & 17).

A separate Order follows.

Dated: October 28th, 2015

                ____/s/_____
                  Richard D. Bennett
                  United States District Judge