IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| VICKI LYNN NORVELL, | * | |
| Plaintiff, | * | |
| v. | * | Civil Action No. RDB-14-3662 |
| METROPOLITAN LIFE INSURANCE COMPANY, | * | |
| | * | |
| Defendant. | * | |
| | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \*

## MEMORANDUM OPINION

Plaintiff Vicki Norvell ("Plaintiff" or "Norvell") initiated the present action against Defendant Metropolitan Life Insurance Company ("Defendant" or "MetLife"), claiming breach of contract. Specifically, Plaintiff alleges that Defendant failed to pay benefits due under an Accidental Death and Dismemberment Insurance Policy ("the Policy") following the death of her husband, Tas Owens ("Decedent" or "Owens"). The parties filed cross-motions for summary judgment (ECF Nos. 14, 22, and 23), which this Court denied via Order dated October 28, 2015 (ECF No. 26). Currently pending before this Court are Plaintiff's Motion in Limine (ECF No. 15), Plaintiff's Second Motion in Limine (ECF No. 17), and Defendant's Motion for Reconsideration (ECF No. 29). Having reviewed the parties' submissions, this Court finds that no

hearing is necessary.[1] *See* Local Rule 105.6 (D. Md. 2014). For the reasons that follow, Plaintiff's Motion in Limine (ECF No. 15) and Plaintiff's Second Motion in Limine (ECF No. 17) are both DENIED WITHOUT PREJUDICE, subject to refiling. Additionally, Defendant's Motion for Reconsideration (ECF No. 29) is DENIED.

## BACKGROUND

The background facts of this action were set forth fully in this Court's Memorandum Opinion dated October 28, 2015 (ECF No. 25). To summarize, Plaintiff Vicki Norvell ("Plaintiff" or "Norvell") was the beneficiary of a Voluntary Accidental Death and Dismemberment Insurance Policy ("the Policy"), covering her husband Tas Owens ("Decedent" or "Owens") and underwritten by Defendant Metropolitan Life Insurance Company ("Defendant" or "MetLife"). Norvell Aff., p. 11-12, ECF No. 22-3. The Policy guaranteed Norvell a $195,000 payment in the event Owens "sustain[ed] an accidental injury that [was] the Direct and Sole Cause of a Covered Loss." Policy, p. 42, MET000186, ECF No. 20-2.

The Policy did not provide benefits "for any loss caused or contributed to by:"

1. physical or mental illness or the diagnosis or treatment of such illness;
2. infection, other than infection occurring in an external accidental wound;
3. suicide or attempted suicide;
4. self-inflicted injury by an insane person;

---

[1] This Court suggested in its October 28, 2015 Memorandum Opinion that a hearing would be scheduled to resolve Plaintiff's pending Motions in Limine. Memorandum Opinion, p. 2, ECF No. 25. However, having reviewed the parties' submissions and pursuant to Local Rule 105.6, this Court finds that no hearing is necessary. This Court will now rule on all pending motions.

5. service in the armed forces of any country or international authority, except the United States National Guard;
6. You or Your Dependents committing or attempting to commit a felony;
7. You or Your Dependents being under the influence of any narcotic;
8. war, whether declared or undeclared; or act of war.

*Id*. at 42, MET000186. Additionally, the Policy included an "Exclusion for Intoxication" provision. *Id*. That provision stated as follows:

**Exclusion for Intoxication**

We will not pay benefits under this section for any loss resulting from Your or Your Dependents intoxication.

Intoxicated means that Your or Your Dependents blood alcohol level met or exceeded the level that creates a legal presumption of intoxication under the laws of the jurisdiction in which the incident occurred. *Id*.

Norvell has testified that her husband, Owens, drank alcohol on a nightly basis, both to cope with chronic pain and to help him relax. Norvell Dep., p. 35, 70, ECF No. 14-4. However, on the night of January 30, 2013, there was no alcohol in their house. *Id*. at 40. Norvell testified that Owens was drinking soda when she went to bed. *Id*. At that time, he seemed "normal and coherent." *Id*. However, when Norvell awoke the next morning, she found Owens "really out of it, . . . not coherent," and hardly able to speak. *Id*. Norvell called an ambulance, and Owens was transported to a hospital. *Id*.

The parties have stipulated that Owens "intentionally drank Prestone from a spray bottle of Prestone Ice and Frost Shield." Joint Stipulation of Facts at ¶ 2, ECF

No. 22-7. He "unscrewed the top of [the bottle] and either poured the Prestone into a glass and drank it, or drank [it] directly from the bottle." *Id*. A warning was printed on the back of the Prestone bottle. It stated the following:

> DANGER [skull and cross bones image] POISON: Contains methyl alcohol (67-56-1) and propylene glycol (57-55-6). PRECAUTIONARY MEASURES: Cannot be made nonpoisonous. Do not swallow or breathe vapors. Avoid eye and skin contact. Use in a well-ventilated area. Deliberate concentration and inhalation of vapors may be fatal. FIRST AID: If swallowed, do NOT induce vomiting. IMMEDIATELY call a local poison control center or hospital emergency department. If inhaled, move person into fresh air. If in eyes, immediately flush eyes with water for 15 minutes. If on skin, remove contaminated clothing and wash skin thoroughly with soap and water. If irritation develops and persists, contact a doctor.
> KEEP OUT OF REACH OF CHILDREN.

Prestone Photo, ECF No. 14-5 (emphasis omitted).

Owens died on February 1, 2013 at a hospital in Annapolis, Maryland. Certificate of Death, ECF No. 14-2. The cause of death was listed as "Methanol Poisoning." *Id*. Nothing in the record suggests that Owens left a suicide note. Tests taken at the hospital indicate that Owens' methanol blood alcohol level was 333 milligrams per deciliter, or .333 grams per 100 milliliters.[2] Abstract Report, p. 21, ECF No. 17-4. Owens had an alcohol serum level of less than 10 milligrams per deciliter, or .01 grams per milliliter. IP Encounter Report, p. 5, ECF No. 17-2. Dr. Yale Caplan was hired by Defendant to review Owens' records. He concluded that Owens consumed at least 14-25 ounces of

---

[2] Under MD. CODE ANN., CTS. & JUD. PROC. § 10-307(a)(3), blood alcohol concentrations expressed in milligrams per deciliter should be converted into grams per 100 milliliters by dividing the measure by 1000.

Prestone, or at least forty-five percent of the bottle.  Caplan Report, p. 3, ECF No. 22-6.  The methanol contained in Prestone caused intoxication, loss of hand-eye coordination, diminished vision, depression of Owens' nervous system, severe toxicity, and ultimately death.  *Id.*

Plaintiff retained Dr. Aaron Noonberg to assess whether Owens died accidentally or by suicide.  Dr. Noonberg concluded that Owens died of methanol poisoning, but that the facts do not support a finding of suicide.[3]  Noonberg Report at p. 1, ECF No. 14-6.  Rather, Dr. Noonberg concluded, Owens needed a drink, but did not have any alcohol in the house.  *Id.* at 7.  Therefore, like many alcoholics, he reached for another liquid with alcohol as a primary ingredient.  *Id.*  In the present case, that liquid happened to be Prestone.  *Id.*  In reaching his conclusion, Dr. Noonberg considered a wide array of evidence, including information about Owens' lifestyle and plans for the future that suggested he would not have intentionally harmed himself by consuming a substance he knew to be poisonous.  *Id.* at 2-7.

Following Owens' death, Norvell submitted a claim for benefits under the Policy, which was subsequently denied. Soon thereafter, she initiated the present action.  Subsequently, both Norvell and MetLife filed cross-motions for summary judgment, which this Court denied.  *See* Order, ECF No. 26.

---

[3] Defendant has attacked Dr. Noonberg's report as an "unsworn expert report" and argues that it is not admissible as evidence under Rule 56 of the Federal Rules of Civil Procedure.  Def. Mot. Summary J., p. 9, ECF No. 22-1.  This Court rejected Defendant's argument and did consider Dr. Noonberg's report in its October 28, 2015 Memorandum Opinion denying the parties' cross-motions for summary judgment (ECF No. 25).

## STANDARD OF REVIEW

I.  Motion for Reconsideration

Rule 54(b) provides in pertinent part that an interlocutory order "may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities." Fed. R. Civ. P. 54(b); *Boyd v. Coventry Health Care, Inc.*, 828 F. Supp. 2d 809, 813–14 (D. Md. 2011). "Motions for reconsideration of interlocutory orders are not subject to the strict standards applicable to motions for reconsideration of a final judgment. Rather, whether to review a prior decision is left to the discretion of the district judge." *WW, LLC v. Coffee Beanery, Ltd.*, No. WMN–05–3360, 2013 WL 4602845, at *1 (D. Md. Aug. 28, 2013) (citing *Am. Canoe Ass'n v. Murphy Farms, Inc.*, 326 F.3d 505, 514–15 (4th Cir. 2003) and *Boyd*, 828 F. Supp. 2d at 813–14). Reconsideration may be appropriate "where, for example, the Court has patently misunderstood a party, . . . [or there has been] a controlling or significant change in the law or facts since the submission of the issue to the Court." *Solomon v. Dawson*, No. PWG–13–1953, 2013 WL 4747987, at *1 (D. Md. Sept. 3, 2013) (quoting *Above the Belt, Inc. v. Bohannon Roofing, Inc.*, 99 F.R.D. 99, 101 (E.D. Va. 1983) (internal quotation marks omitted)). However, "relief is rarely ever appropriate when the motion raises no new arguments, but merely requests the district court to reconsider a legal issue or to change its mind." *Boyd*, 828 F. Supp. 2d at 814 (quoting

*Pritchard v. Wal–Mart Stores, Inc.*, 3 F. App'x 52, 53 (4th Cir. 2001) (internal quotation marks and alterations omitted)).

## II.   Motions in Limine

Rule 702 of the Federal Rules of Evidence provides that an expert witness may testify in the form of an opinion or otherwise if "(a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case. Fed. R. Evid. 702. A court's role in applying Rule 702 is to act as a gatekeeper, excluding unreliable expert testimony. *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579 (1993); *see also Kumho Tire Co. v. Carmichael*, 526 U.S. 137 (1999) (holding that Daubert's gatekeeping obligation applies not only to scientific testimony but to all expert testimony).

In determining whether proffered expert testimony is reliable, the district court has broad discretion to consider whatever factors bearing on validity the court finds to be useful; the particular factors will depend upon the unique circumstances of the expert testimony involved, and no single factor is necessarily dispositive. *See Kumho Tire*, 526 U.S. at 152–53. "The court, however, should be conscious of two guiding, and sometimes competing, principles: (1) 'that Rule 702 was intended to liberalize the introduction of relevant expert evidence'; and (2) 'that due to the difficulty of

evaluating their testimony, expert witnesses have the potential to be both powerful and quite misleading.' " *United States v. Hammoud*, 381 F.3d 316, 337 (4th Cir. 2004) (quoting *Westberry v. Gislaved Gummi AB*, 178 F.3d 257, 261 (4th Cir. 1999)).

The proponent of expert testimony bears the burden of production to come forward with evidence to support its contention that an expert's testimony would be both reliable and helpful. *See Bourjaily v. United States*, 483 U.S. 171 (1987). The Court in *Daubert* reminded district courts, however, that "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Daubert*, 509 U.S. at 595. Moreover, the United States Court of Appeals for the Fourth Circuit has held that "[a] court need not determine that the expert testimony a litigant seeks to offer into evidence is irrefutable or certainly correct." *Westberry*, 178 F.3d at 261.

I.  **Defendant's Motion for Reconsideration (ECF No. 29)**

   A. **Owens' Death Was Not Intentional as a Matter of Law**

Defendant contends that this Court "misunderstood MetLife's argument that Mr. Owens intentionally engaged in a voluntary act that caused him harm based on the undisputed facts, and these facts prevent a reasonable jury from concluding as a matter of law that Mr. Owens's death was the result of an 'accidental injury.' " Mot. for Recons., p. 4, ECF No. 29-1. Defendant posits that "whether Mr. Owens' death

was the result of an accidental injury turns on whether he intentionally committed an act that he knew (subjectively) carried a foreseeable risk as set forth in *Gordon v. Metropolitan Life Ins. Co.*, 260 A.2d 338 (Md. App. 1970), and as more recently articulated in *MAMSI Life v. Health Ins. Co. v. Callaway*, 825 A.2d 995, 1007 (Md. 2003)." *Id*. at 5.

Here, like in *MAMSI* and *Gordon*, Defendant argues, it is undisputed that Owens "intentionally drank the Prestone." Mot. for Recons., p. 7, ECF No. 29-1 (citing Memorandum Opinion, p. 4, ECF No. 25). Additionally, Norvell has stated that "Owens knew 'that drinking Prestone could hurt him,' he knew 'that drinking poison could hurt him,' and he knew 'that drinking a large amount of [Prestone] could kill him')." *Id*. Furthermore, MetLife argues that Dr. Caplan "provided un-rebutted expert testimony stating that consuming Prestone causes injury (and specifically caused Mr. Owens's injuries and death.)". *Id*. For these reasons, Defendant argues, Owens died of an intentional injury, barring Plaintiff's recovery as a matter of law. *Id*. at 8-9. Defendant further argues that the sufficiency of the warning labels should have no impact on this Court's analysis because Norvell testified that Owens understood that drinking Prestone was harmful. *Id*. at 9 (citing Norvell Dep., 50-51, 58, ECF No. 22-3). Additionally, Defendant presents new evidence indicating that "Mr. Owens purchased the Prestone that was in his home and that he had previously used it for its

intended industrial use (as opposed to drinking it recreationally)." *Id*. at 10 (citing Norvell Dep., p. 76:6-7).

This Court did not misconstrue Defendant's argument in its October 28, 2015 Memorandum Opinion (ECF No. 25).  Defendant does not necessarily contend that the policy's suicide exclusion applies, but that Plaintiff has failed, as a matter of law, to meet her burden of showing that Owens' death was the result of an "accidental injury" covered by the Policy.  In the October 28, 2015 Memorandum Opinion, this court correctly identified the test for determining whether an injury is "accidental"—the test now proposed by Defendant—stating that " 'the key inquiry is whether the intentional act caused a foreseeable injury . . .' " Mem. Opinion, p. 16, ECF No. 25 (citing *MAMSI Life & Health Ins. Co. v. Callaway*, 825 A.2d 995 (Md. 2003)).  In this case, as this Court concluded in its October 28, 2015 Memorandum Opinion, a genuine issue of material fact remains as to whether or not Owens intentionally drank the Prestone despite a foreseeable risk of injury.

The parties have stipulated that Owens "intentionally drank Prestone."  Joint Stipulation of Facts at ¶ 2, ECF No. 22-7.  Additionally, Norvell has testified that Owens "bought [Prestone] for squirting on the windshield," responded "I'm sure he did" when asked if Owens knew "that drinking Prestone could hurt him," and responded "I'm sure that he did" when asked if Owens "understood that drinking a large amount of the alcohol based product he consumed could kill him."  Norvell

Dep., p. 50-51, 58, 76. However, Norvell could not remember the precise date on which Owens had allegedly purchased the Prestone, or even if he had purchased it in the same year as his death. *Id*. at 76. Additionally, this Court has reviewed the warnings on the Prestone bottle and, as stated in the October 28, 2015 Memorandum Opinion, "a genuine issue of material fact remains regarding whether or not they were insufficient" to convey a "foreseeable" risk of injury to someone in Owens' situation. Mem. Opinion, p. 17, ECF No. 25.

Furthermore, Dr. Noonberg concluded that Owens "died accidentally," writing that:

> Like many alcoholics [Owens] tried a product containing alcohol because he did not have any alcohol in the house, and died accidentally at a time when life was going extremely well for him having learned six months earlier that many chronic medical problems were due to his gall bladder that was extracted without adverse consequence rendering him able to enjoy a new quality of life, and foods that he had missed for a long time. He had just started a new job with a promotion to management and a raise and occupational opportunity that was exciting to him. He had made multiple short term and long term future plans with a wife of two years he obviously loved. There is no evidence of any reason Mr. Owens would have preferred to end his life.

Noonberg Report, p. 7, ECF No. 14-6.

Although the issue presently before this court is one of "foreseeability" as opposed to Owens' subjective intent or risk for suicidal behavior, all of these findings suggest that injury must *not* have been "foreseeable" when Owens drank from the

Prestone bottle on January 30, 2013. Otherwise, he would not have consumed it.[4] A genuine issue of material fact remains as to whether or not Owens intentionally drank Prestone despite a "foreseeable" risk of injury. Therefore, Defendant's request for reconsideration fails with respect to its argument that Owens' death was intentional as a matter of law.

### B. Owens' Death Was Not "Resulting From" Intoxication as a Matter of Law

Defendant argues that "based on additional law, evidence and argument upon which MetLife did not rely in its summary judgment briefing or which was not considered in the Summary Judgment Decision, there is no genuine material factual dispute that Mr. Owens dies from methanol intoxication within the meaning of the ADD policy." Mot. for Recons., p. 4, ECF No. 29-1. Defendant objects that "[t]here is no medical record stating that Mr. Owens was not intoxicated based on his 'blood alcohol level' as contemplated in the ADD policy." *Id.* at 12. Defendant argues that Plaintiff's counsel incorrectly defines "blood alcohol level" as "alcohol serum level," and offers no expert testimony to support that interpretation. *Id.* On the contrary, Defendant contends that Dr. Caplan, in his sworn statement, explained that "Mr. Owens was intoxicated based on his methanol blood alcohol level and based on applicable Maryland law regarding intoxication." *Id.* Defendant concludes that

---

[4] In ruling on a motion for summary judgment, this Court must consider the facts and all reasonable inferences in the light most favorable to the nonmoving party. *Scott v. Harris*, 550 U.S. 372, 378 (2007).

Plaintiff, by relying on mere argument of counsel, has failed to raise a genuine dispute that Owens was not intoxicated. *Id.* at 13.

Defendant also contends that Plaintiff fails to raise a genuine dispute that Owens' intoxication was not the cause of his death. *Id.* Defendant objects that this Court attempts "to draw a distinction between alcohol intoxication and alcohol poisoning without any record evidence presented by Plaintiff (other than unsupported argument of her counsel)." *Id.* at 14. Defendant cites several cases from outside the Fourth Circuit for the proposition that "intoxication" includes "alcohol poisoning." *See, e.g., Brauer v. Prudential Ins. Co. of America*, No. Civ.A. 04-531-JBC, 2006 WL 39058, at *1 (E.D. Ky. Jan. 4, 2006); *Blue Cross & Blue Shield of Florida, Inc. v. Steck*, 778 So. 2d 374, 376 (Fla. Dist. Ct. App. 2001). Defendant asserts that Dr. Caplan offered "an unchallenged expert opinion that "Mr. Owens ingested a dose of approximately 10 ounces of pure 100% methanol;" that "Mr. Owens was intoxicated by the alcohol (methanol) during the course of his initial ingestion;" and that the dose was ultimately fatal. *Id.* at 15 (citing Caplan Report, ECF No. 20, Ex. 5-A, Conclusions 1-3).

While Defendant objects that Plaintiff has offered insufficient evidence to show that the intoxication exclusion does not apply, "[a] basic rule of insurance law provides that the insured must prove that a covered loss has occurred, while the insurer carries the burden of demonstrating that a loss falls within an exclusionary clause of the policy." *Jenkins v. Montgomery Industries, Inc.*, 77 F.3d 740, 743 (4th Cir. 1996); *Horton*

*v. Life Ins. Co. of North America*, No. ELH-14-3, 2015 WL 1469196, at *15 (D. Md. Mar. 30, 2015). Therefore, in this case, Defendant bears the burden of proving that Owens' death "result[ed] from" intoxication and that the intoxication exclusion should bar Plaintiff's recovery under the Policy. As this Court concluded in its Memorandum Opinion dated October 28, 2015, a genuine dispute of material fact remains as to whether or not Owens' death "result[ed] from" intoxication.

Most cases interpreting intoxication exclusions in insurance contracts have involved a more distinct causal link between intoxication and death than the present case. *See, e.g., Balthis v. AIG Life Ins. Co.*, 5 Fed. Appx. 320, 323 (4th Cir. 2001) (upholding trial court's decision to grant defendant insurer's motion for summary judgment where "the decedent died after he choked on his vomit which was caused by alcohol intoxication"); *Horton v. Life Ins. Co. of North America*, No. ELH–14–32015, 2015 WL 1469196, at *30 (D. Md. Mar. 30, 2015) (denying summary judgment where decedent was found in open water with a blood alcohol concentration of .13. and had been operating a boat while drinking alcohol). In its October 28, 2015 Memorandum Opinion, this Court observed that the present case more closely resembles *Nichols v. Unicare Life and Health Ins. Co.*, 739 F. 3d 1176, 1179 (8th Cir. 2014). In that case, the decedent died of "mixed drug intoxication." *Nichols*, 739 F.3d at 1179. Finding that an intoxication exclusion similar to the one in this case did not apply to the woman's death, the court in *Nichols* reasoned that the exclusion is not intended to apply to

14

"situations where the immediate cause of death is ingestion of a lethal mixture of drugs." *Id.* at 1184.  Here, like in *Nichols*, Owens did not consume an alcoholic beverage, but rather a lethal chemical concoction, one of the ingredients being a form of alcohol.

The "alcohol poisoning" cases cited by Defendant are readily distinguishable from the facts in this case.  For example, the decedent in *Brauer*, 2006 WL 39058, at *1 "had been drinking very heavily [all night], continuing into the early morning," before dying from "accidental alcohol poisoning" and the decedent in *Blue Cross*, 778 So. 2d at 376 was killed "by a vehicle while attempting to cross a busy street," an accident "occasioned by her inebriated condition."  Furthermore, the *Blue Cross* court affirmed an order denying the Defendant insurer's motion for summary judgment, finding that the intoxication exclusion in that case did not apply.  *Blue Cross*, 778 So. 2d at 377. Each of these cases involves the consumption of an alcoholic product marketed for consumption, as opposed to a poisonous compound with a lesser-known form of alcohol as an ingredient.  This Court maintains that the *Nichols* case is the closest analogue to the facts here.  In that case, the Court found that the intoxication exclusion did not apply.  Therefore, this Court will not rule as a matter of law that the intoxication exclusion does bar recovery in this case.  Accordingly, Defendant's Motion for Reconsideration is DENIED.

II.     <u>Plaintiff's Motion in Limine (ECF No. 15)</u>

Plaintiff requests that this Court "instruct the juries, witnesses, experts and anyone who will testify in Limine . . . [that] Dr. Yale H. Caplan cannot testify to anything except areas of toxicology." Mot. in Limine, p. 1, ECF No. 15. She argues that Dr. Caplan "is not qualified to testify to state of mind, intent or psychiatric issues." *Id*. Therefore, Plaintiff contends, he should be "precluded from testifying to these issues . . . and [the] defense is precluded from making any arguments based on a position that is not supported by the evidence in this case." *Id*.

Defendant objects that Plaintiff's Motion in Limine is untimely because "[t]his Court has not set a pre-trial order or scheduled any trial actions beyond hearing dispositive motions," "[it was] filed before this Court and the parties . . . determined the relevant issues for trial," and because "Plaintiff is asking the Court to rule on trial issues when a trial may not be necessary if summary judgment is entered in MetLife's favor." Def.'s Opp'n, p. 2, ECF No. 19. "Until this Court rules on the cross motions for summary judgment," Defendant argues, "the Motion[] [is] untimely and thus improper." *Id*.

Defendant also argues that Plaintiff's Motion is "nothing more than [a] summary judgment motion[] in disguise." *Id*. at 3. "Rather than addressing the grounds to exclude evidence, Plaintiff instead improperly argues that particular exclusions to the policy should not apply as a matter of law based on *the facts* of the case." *Id*. Defendant objects that "a motion *in limine* is not the appropriate

mechanism for determining whether the facts of a particular case support a particular legal conclusion." *Id*. at 4.  Furthermore, MetLife contends, "Plaintiff does not provide a single citation to either a Federal Rule of Evidence or any relevant case law whatsoever to the evidentiary grounds for the Motion[]."  MetLife requests that this Court "deny Plaintiff's motion[] *in limine*, or at least defer ruling on Plaintiff's motion[] *in limine* until after summary judgment." *Id*. at 4.

Dr. Caplan's report does not, on its face, include findings pertaining to "state of mind, intent, or psychiatric issues."  Caplan Report, ECF No. 22-6.  Additionally, Plaintiff has not identified any specific objectionable testimony that she anticipates Dr. Caplan will offer.  If Defendant offers Dr. Caplan as an expert witness at trial, this Court will assess his expertise pursuant to Rule 702 of the Federal Rules of Evidence and *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579 (1993).  Until that time, however, this Court will not issue an order limiting Dr. Caplan's testimony.  Therefore, Plaintiff's Motion in Limine is DENIED WITHOUT PREJUDICE, subject to refiling.

### III. Plaintiff's Second Motion in Limine (ECF No. 17)

Plaintiff requests that this Court "instruct the juries, witnesses, experts and anyone who will testify in Limine . . . [that]" neither the "Suicide or attempted suicide" exclusion nor the intoxication exclusion to the Policy applies in this case.

Second Mot. in Limine at ¶ 1, ECF No. 17.  Therefore, she contends, "Defense counsel and witnesses ought to be precluded from testifying to these arguments." *Id.*

This Court has already considered, and rejected, Plaintiff's argument that the intoxication exclusion does not apply as a matter of law.  *See* Mem. Op., p. 14-15.  On the contrary, a genuine dispute of material fact remains as to whether or not Owens' death "result[ed] from" intoxication.  *See* discussion *supra*.  Therefore, this Court will not instruct the "juries, witnesses, experts and anyone who will testify in Limine" that the intoxication exclusion does not apply.  Likewise, this Court will not issue the same instruction with respect to the "suicide or attempted suicide" exclusion.  As this Court concluded in its October 28, 2015 Memorandum Opinion, "there are genuine issues of material fact with respect to whether Owens intended to commit suicide or, at least, intentionally injure himself." Mem. Op., p. 12, ECF No. 25.  Consequently, Plaintiff's Second Motion in Limine is DENIED WITHOUT PREJUDICE, subject to refiling.

## CONCLUSION

For the foregoing reasons, Plaintiff's Motion in Limine (ECF No. 15) and Plaintiff's Second Motion in Limine (ECF No. 17) are both DENIED WITHOUT

PREJUDICE, subject to refiling.  Defendant's Motion for Reconsideration (ECF No. 29) is also DENIED.

A separate Order follows.

Dated: December 23, 2015                                          /s/_____
                                                                                    Richard D. Bennett
                                                                                    United States District Judge